IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NUMBER: 2:25-cr-1174-RMG |
| | ) | |
| -versus- | ) | |
| | ) | |
| JAMES BENJAMIN GOSNELL, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MOTION TO SUPPRESS AND REQUEST FOR A *FRANKS* HEARING

Comes now, the defendant, James B. Gosnell, Jr., (hereinafter "Mr. Gosnell" or "Defendant" ) by and through his attorney, Lionel S. Lofton, and moves before this Court pursuant to Rule 12 of the Federal Rules of Criminal Procedure for an order (1) suppressing all evidence seized and statements made based on an invalid warrant issued in violation of the Fourth Amendment of the United States Constitution and (2) to request this Court order a hearing regarding government misconduct in procuring the issuance of the search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978). In support of his motion, Mr. Gosnell will show that on September 16, 2025, Homeland Security Investigations ("HSI") conducted a search of his residence pursuant to a warrant that was (1) unsupported by probable cause (2) issued based on stale evidence and (3) supported by an affidavit that was tainted with misleading statements and material omissions of fact. Mr. Gosnell respectfully requests that the Court suppress all evidence seized during that search as well as the fruits of such evidence including any incriminating statements made during the search and further requests a *Franks* hearing to determine the veracity of the supporting affidavit.

## STATEMENT OF FACTS

On September 15, 2025, The Honorable Magistrate Judge Molly Cherry issued a warrant for HSI to search Mr. Gosnell's residence and any electronic storage devices found therein for contraband and evidence constituting violations of 18 U.S.C. § 2252A. Ex. B (Filed/Sealed Search Warrant Package including: Search Warrant Application, Affidavit in Support of Search Warrant with Attachments A & B, and Search Warrant). HSI Agent Tallio provided the affidavit in support of the search warrant application. Ex. A (Redacted Affidavit in Support of Search Warrant). Section 2252A criminalizes activities and materials relating to the sexual exploitation of minors by people who knowingly possess, knowingly accesses with intent to view, receive, transport or ship such material in interstate commerce. (Ex. A, ¶ 5).

Although the affidavit is 36 pages long, the investigation into and the facts concerning Mr. Gosnell are sparce and strategically placed within the affidavit. (*Id*. at ¶¶13-19, 22(a), 22(d)(i)). According to the affidavit, on December 4, 2024, Paypal Inc., a financial company that facilitates peer to peer online money transfers, filed a Cybertip report with the National Center for Missing and Exploited Children ("NCMEC"). The Cybertip report identified concerns PayPal had regarding financial transactions between 51 ▮ accounts which PayPal suspected was associated to one individual, ▮▮▮▮▮▮▮▮▮▮▮▮ Paypal identified 171 accounts which either sent or attempted to send money to the 51 ▮▮▮▮ ("suspected buyer accounts"). Based on notes and messages that accompanied transactions from a *few* suspected buyer accounts and that a *few* suspected buyers had *relevant* criminal histories, PayPal suspected the purchase of child pornography by the suspected buyer accounts. (*Id*. at ¶ 7(a)-(c)). PayPal also provided law enforcement with account subscriber information and transaction data related to both the ▮▮▮ and suspected buyer accounts. Out of the 171 suspected buyer accounts, 79 were identified as

having addresses based in the United States. Law Enforcement identified 12 individuals believed to be relevant to this investigation after querying their databases and listed them by name, alleged relevant criminal history/info and financial transactions they had with ███████ (*Id*. at ¶¶ 9(a)-(l)). None of these 12 individuals' *relevant* criminal histories/information were alleged to be related to any financial transaction had with any ████ account. Moreover, Mr. Gosnell is not alleged to have had a relationship with any of these individuals. The information and investigation concerning Mr. Gosnell that follows relates to the financial transactions that Mr. Gosnell is alleged to have had with the ████ accounts.

Mr. Gosnell had two PayPal accounts, one ending in "9731" and the other ending in "4954". Mr. Gosnell's PayPal accounts were linked to his Costco CitiBank credit card. While the "9731" account was identified by PayPal as a suspected buyer account because it transacted financially with a ████ account, no Gosnell financial transaction was identified by PayPal as "indicative of child pornography" (*Id*. at 7(a)).

According to the affidavit, on November 4, 2024, Gosnell account ending in "9731" was the payer account on two identical transactions to a single ████ account ending in "4379". The note associated with these financial transactions stated "vids". (*Id*. at ¶16) Immediately following these financial transactions, Mr. Gosnell requested a refund[1]. On November 5, 2024, ████ ████████████ sent a message via Paypal to Gosnell account ending in "9731" stating that the refunds had been "sorted" and were being returned. (*Id*. at ¶ 22(a)). In December 2024, Mr. Gosnell notified his bank that his Costco Citibank credit card statement showed a large number

---

[1] There were 3 "Denied_Canceled" transactions immediately following these transactions from Gosnell's Paypal account ending in 4954 with ████ account ending in 8363 with the subject "Games". Because these were "Denied_Canceled" no money was transferred. Gosnell account ending in 4954 was not identified as a suspected buyer account in the NCMEC Cybertip.

of unauthorized transactions. On December 20, 2024, Citibank put a hold on his account and reissued him a new credit card while investigating the reported fraud. (*Id.* at ¶ 16). Aside from the identification of Mr. Gosnell's premises as the place to be searched, the information set forth above is the only information in the affidavit regarding Mr. Gosnell and his connection to any ███ account. There is no evidence in the affidavit that supports Mr. Gosnell purchased, received and/or possessed child pornography at any time.

As to ███ the affidavit alleges that law enforcement reached out to authorities in the



The majority of the affidavit is dedicated to investigations into other suspected buyer accounts, ███ accounts, and a few boilerplate recitations regarding "child pornography and the internet" and "characteristics of those that possess, distribute, receive etc. child pornography". The

remaining sections of the affidavit, not previously discussed, concern the agent's background, statutory authority and definitions. The affidavit fails to provide any additional information related to Mr. Gosnell beyond the mere suspicion set forth in the Cybertip report of December 4, 2024.

On the morning of September 16, 2025, HSI agents, which included Agent Tallio, executed the search warrant at Mr. Gosnell's residence, during which they seized evidence and interrogated Mr. Gosnell.  Mr. Gosnell allegedly made incriminating statements during the search of his residence. He was arrested that same day. On October 14, 2025, the Federal Grand Jury indicted Mr. Gosnell based on the evidence seized and statements made during the search of his residence. All evidence seized and statements made were in violation of the Fourth Amendment.

## ARGUMENT

The warrant to search Mr. Gosnell's residence was issued in violation of the Fourth Amendment. The search warrant was not supported by probable cause because the supporting affidavit provided no evidence that the PayPal financial transactions between Mr. Gosnell and the ▮▮▮ account were for the purchase of and resulted in the receipt of child pornography. Furthermore, there was no evidence from which the magistrate could have concluded that a fair probability existed that evidence of child pornography would be found at Mr. Gosnell's residence. Second, in so far as the Court finds that the facts in the affidavit were supported by probable cause to search Mr. Gosnell's residence in November of 2024, these scant facts did not still provide probable cause to search Mr. Gosnell's residence more than 10 months later when the government obtained the residential search warrant on September 15, 2025.  Finally, the affidavit contained misleading statements and conclusions, and omitted material facts and information without which the warrant would not have issued.  For the reasons and arguments set forth herein, the search of

Mr. Gosnell's residence violated the Fourth Amendment and all evidence seized and statements made during the search of Mr. Gosnell's residence must be suppressed.

## I.     The affidavit in support of the search warrant lacked probable cause

Assuming arguendo, that HSI did not knowingly and/or recklessly mislead the magistrate and/or omit material facts from the affidavit, the search warrant issued for Mr. Gosnell's residence was invalid because it was not supported by probable cause.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Supreme Court explained in *Illinois v. Gates* that "probable cause is a fluid concept– turning on the assessment of probabilities in particular factual contexts– not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. 213, 232 (1983). In determining whether probable cause exists, a magistrate is required to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit...there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. The affidavit in support of the search warrant must be more than conclusory in order for the magistrate to make this determination. While it is true that law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person," they can only do so if the affidavit contains facts to support their conclusions." *U.S v. Johnson* 599 F.3d 339, 343 (4th Cir. 2010) (quoting *U.S. v. Arvizu,* 534 U.S. 266, 273, (2002)).

The affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Gates* at 239. The duty of the reviewing court is to ensure that the magistrate had a substantial basis for finding probable cause and in doing so must limit its inquiry to the four corners of the affidavit. *U.S. v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019 (the reviewing court must consider only facts contained in the warrant application).

The search warrant for Mr. Gosnell's residence was not supported by probable cause to establish to fair probability that evidence of child pornography would be found at his residence. There are insufficient facts alleged in the affidavit to connect Mr. Gosnell's PayPal transactions to any subsequent possession or receipt of child pornography. The financial transactions on their face bore no indicia of child pornography and without more, do not provide probable cause to search Mr. Gosnell's residence for evidence of child pornography.

█████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████

The only factual allegations pertaining to any "alleged conduct" by Mr. Gosnell arose out of the two November 4, 2024, financial transactions from Gosnell Paypal account ending in "9731" to a single ████████████████████████ within minutes of each other, with a transaction note of "vids" from which Mr. Gosnell requested an immediate refund. There are no transaction notes or messages associated with these financial transactions that are indicative of child pornography. Moreover, on November 5, 2024, within 24 hours of these two financial transactions, ████████████████████████ sent a message to Gosnell Paypal account ending in "9731" informing Mr. Gosnell that his refund had been "sorted" and was on the way

back. (Ex. A, ¶ 22(a)). Furthermore, as stated in the affidavit, Mr. Gosnell had no other known connection to ▮▮▮ (*Id.* at ¶ 19). More importantly, based on ▮▮▮ known behavior as documented in the affidavit and further ▮▮▮▮▮▮▮▮▮ it was ▮▮▮ *modus operendi* to extort/blackmail individuals who sought refunds, if he had in fact sent them something illicit. (*Id.* at ¶¶ 7(d), 22(c)(i)).

In order for this Court to find that the magistrate had a substantial basis for finding probable cause, it would have to find that the magistrate appropriately made the following two inferences: *First,* the magistrate would have to infer that, because ▮▮▮▮▮▮▮▮ ▮▮▮ that he only dealt in child pornography. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ If there is reason to believe that ▮▮▮ did in fact sell other kinds of videos, then the magistrate would have to conclude that Mr. Gosnell's transaction(s), noted to have been for "vids," could have been for any kind of video, and not necessarily child pornography. Given the contradictory information regarding the nature of the videos ▮▮▮ sold, to arrive at the conclusion that, because ▮▮▮▮▮▮▮▮ anyone transacting with him over PayPal must have been seeking child pornography, actually comes as a result not so much of an inference, but a leap. If a "vendor" sells a variety of goods, only a subset of which is illegal, then with respect to the question of probable cause, simply handing over money to that vendor does not give rise to a fair probability that one is doing so for illegal purposes would have to be at best *mere speculation.*

*Second,* the magistrate must infer that Mr. Gosnell received child pornography as a result of financial transactions which not only bore no indicia of being related to child pornography on its face but was being refunded. This second inference is less a leap than an error in reasoning

defying logic and common sense. It would constitute a fundamental aberration in the practice of business for ▮▮▮ to refund Mr. Gosnell's money—as he messaged him through PayPal that he would do—for a product like a digital file, that as a result of its being nondiscrete and intangible, cannot be returned. Therefore, logic would dictate that ▮▮▮ would only refund Mr. Gosnell's money if Mr. Gosnell had not received any product or any product that could not be returned. The affidavit also made clear, as stated above, that ▮▮▮ would threaten individuals with blackmail if they requested refunds after receiving illicit material. (*Id.* at ¶¶ 7(d), 22(c )(i)). Therefore, the magistrate did not have a substantial basis for finding probable cause existed to search Mr. Gosnell's residence for child pornography.

The defense is not aware of any cases in the Fourth Circuit with similar or analogous facts. A review of cases, where search warrants in alleged child pornography cases have been upheld are distinguishable from the facts presented here because the defendant was actually accessing, receiving, possessing and/or transmitting some form of illicit content. *See*, e.g., *U.S. v. Richardson*, 607 F.3d 357, 361, 371 (4th Cir. 2010) (probable cause to search house based on two emailed images); *United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010) (probable cause to search when someone at address uploaded suspected child porn); *United States v. Ramsburg*, 114 Fed App'x 78, 82 (4th Cir. 2004) (probable cause to search based on transmission of one illicit image).

Moreover, the affidavit includes the boilerplate recitation regarding characteristics of individuals that possess, distribute and/or receive child pornography without any factual evidence that Mr. Gosnell has ever received or possessed any child pornography. By including these characteristics in the affidavit, Agent Tallio has imputed these characteristics to Mr. Gosnell without any factual evidence that Mr. Gosnell belongs to this specific class of individuals. This

was improper and should not have been included in the affidavit or used by the magistrate in her probable cause determination.

This case presents nothing more than two identical financial transactions that occurred on one day within minutes of each other, from which Mr. Gosnell requested an immediate refund and from which a refund was "sorted". There is nothing more. Mr. Gosnell has no other connections with ███, any other suspected buyers, or to child pornography in general. Moreover, Mr. Gosnell has no criminal history, has never been alleged to have been associated with child pornography or pedophilia. The factual allegations presented in the affidavit provide absolutely zero evidence that Mr. Gosnell ever possessed, received or accessed child pornography and as such did not support the magistrate finding probable cause that evidence of child pornography would be found at Mr. Gosnell's residence. The affidavit while long, was muddled and contained only scant factual allegations concerning Mr. Gosnell. Further the affidavit was riddled with conclusions without any true factual support. The affidavit failed to provide any connection between the refunded financial transactions and probable cause that evidence of child pornography would be found in his residence. This affidavit was so lacking in indicia of probable cause that the magistrate did not have a substantial basis nor any basis at all in finding probable cause existed.

Generally, if a search violates the Fourth Amendment, "the fruits thereof are inadmissible under the exclusionary rule, a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *U.S. v. Doyle*, 650 F.3d 460, 466 (4th Cir. 2011) (citing *U.S. v. Calandra*, 414 U.S. 338, 348 (1974) (internal quotations omitted).

For the reasons stated above all evidence seized and fruits of the illegal search including any statements made by Mr. Gosnell to law enforcement during the illegal search should be suppressed. Furthermore, since the affidavit in support of the search warrant was so lacking in

indicia of probable cause to make reliance upon it unreasonable, the good faith exception to the exclusionary rule should not apply.

**II.     Financial transactions which occurred over 10 months prior to the issuance of the search warrant for Mr. Gosnell's residence, without more, is too stale to establish probable to search Mr. Gosnell's residence on September 16, 2025.**

Absent some evidence that Mr. Gosnell actually received or possessed child pornography or exhibited "collector behavior", the November 4, 2024, financial transactions that occurred over 10 months prior to the government's application for the search warrant is too stale to establish probable cause to search Mr. Gosnell's residence on September 16, 2025.

The Fourth Amendment "bars search warrants issued on less than probable cause, and there is no question that time is a crucial element of probable cause." *U.S. v. McCall*, 740 F.2d 1331, 1335-36 (4th Cir. 1984).  "A valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time'". *Id.* quoting *Sgro v. U.S*, 287 U.S. 206, 210-11 (1932). "Consequently, evidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt." *McCall*, 740 F.2d at 1336.  In determining staleness, the court must examine all relevant facts and circumstances, "including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized". *Id.*

It is apparently universally accepted that, when it comes to staleness, cases involving child pornography are treated as unique. Unlike in drug cases, for example, substantial lengths of time may pass between the accessing, or taking possession of child pornography, and the issuance of the search warrant, without the underlying information growing stale.     *U.S. v. Bosyk*, 933 F.3d 319, 331 (4th Cir. 2019). The reason being that, when dealing with a "collector" of child

pornography, courts have accepted as appropriate the following inference being drawn: that child pornography may still be found months after the suspect takes it into his possession, or attempts to do so, accesses it, or the like. *Id*. This is because gaining access for possession is very difficult and potentially exposes one to serious risk. As a result, "collectors" treat these materials as prized possessions, and it may therefore be inferred that they hold onto them for an indefinite period of time.

However, it is essential to make clear that this inference is appropriately drawn *only* after the preliminary finding is made that the individual is interested in child pornography; otherwise, it has no value. *Id*. Such precision is important, since making sure to first establish such a finding ensures that authorities are singling out for closer scrutiny only those individuals who were actually seeking out child pornography, and not one who might have accessed it though some mistake, or inadvertence. *Id*. (citing *U.S. v. Raymonda*, 780 F.3d 105, 114-15 (2nd Cir. 2015)).

The aforementioned inference may be proposed by way of presenting one of the following factual showings: that the suspect had paid for access to child pornography; had a history of possession of such materials; was an admitted or convicted pedophile; took elaborate steps to access illegal content; or distributed such content to others. *Id*. If no such factual showings can be made, then the aforementioned inference may not be drawn. And if a court cannot draw such an inference, then any attenuation of the urgency proper to the question of staleness, and probable cause, seen as acceptable in most cases involving child pornography, is impermissible. In other words, this case must necessarily be placed squarely within a timescale proper to more common-sense inquiries into staleness.

In this case, none of those factual showings can be made: Mr. Gosnell was not shown to have paid for access to child pornography; to have such a history; to be either an admitted, or

convicted pedophile; to have taken elaborate steps to access illegal content; nor to have distributed such content to others. Therefore, the court must consider whether ten months, more generally, should be allowed to pass between the "access" or "possession" and the warrant's being issued— particularly when no access or possession can be shown, but rather only a few cancelled, or refunded financial transactions. The defense submits that, once taken outside the context where the "child pornography timescale" inference could have any value, the passage of ten months would result in the information underlying this affidavit becoming stale. Because the probable cause was based on facts that were stale, this Court should grant the defendant's motion to suppress and to the extent the government argues it, the good faith exception is not applicable in this instance.

III.    **The Magistrate was intentionally and/or recklessly misled by information in the affidavit and the affidavit omitted material facts, entitling Mr. Gosnell to a hearing pursuant to Franks v. Delaware.**

An affidavit supporting a search warrant is presumed valid. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684 (1978). However, a criminal defendant is entitled to a Franks hearing in order to challenge the veracity of statements made therein. *Franks*, 438 U.S. at 155–56. A *Franks* hearing entails a two-step process. First, the court makes the determination whether the affiant officer intentionally or recklessly made either false or misleading statements, or omissions, in support of the warrant. *Id*; *See Jackson v. Carin*, 128 F.4th 525, 534, (4th Cir. 2025) (to successfully challenge the affidavit, the Defendant must show that the affiant made false or misleading statements in the affidavit).

Second, if the court finds, by a preponderance of the evidence, that the affiant supported the affidavit with such a statement(s) or omission(s), it then must determine whether the statement or omission was material; it does so by inquiring whether "with the affidavit's false material set to

one side, the affidavit's remaining content is insufficient to establish probable cause." *Franks*, 438 U.S. at 156. If both requirements are met, the search warrant is voided and the fruits of the search are suppressed. *Id*.

> **A.    Agent Tallio intentionally and/or recklessly included misleading statements in the affidavit**

In the factual portion of the affidavit, there are over seven pages which detail the PayPal messages, criminal histories, identities, and interviews of individuals associated with the suspected PayPal accounts. Additionally, the criminal activity of ███████████ ████████████████████████████████ were all recounted before Mr. Gosnell is mentioned.  The arrangement of these statements in the affidavit is so misleading as to essentially be false. (This is also true of most of the nearly seven pages that follow the introduction of Mr. Gosnell.) This arrangement of information was not a mistake, but a technique of persuasion. By leading the magistrate through pages of financial transactions, partial communications, and the suspicions of abject criminality revolving around ████—none of which is shown to have anything to do with Mr. Gosnell—the affiant, through the overabundance of extraneous detail, overwhelmed the magistrate's ability to recognize what is actually relevant for a finding of probable cause. And, just as importantly, the content is so disturbing that it piques her moral reflex, revolting her and priming her for judgment. It is only then that the affiant introduces Mr. Gosnell. What has transpired is essentially a form of sleight of hand: by taking the magistrate through this sordid history, page after page, and then introducing Mr. Gosnell in the center, the affiant is leading the magistrate to draw the apparent inference of connection between Mr. Gosnell and the others through the suggestive power of sequence. As a result, these accumulated details resonate

so powerfully in the mind of the magistrate that, after reading the affidavit, something as simple as refunded, or canceled financial transactions appears culpable.

In accordance with the dictates of *Franks*, if the misleadingly irrelevant material is stricken out, what is left of the affidavit is essentially as follows: a CyberTip connected certain PayPal account activity to the distribution of child pornography by ▮▮▮▮▮▮ One of the identified accounts was associated with Mr. Gosnell. Mr. Gosnell conducted financial transactions that were either immediately refunded or cancelled. Had the magistrate read this version of the affidavit, she would not have been misled but instead would have seen clearly that the most logical, and only sound inference one could draw from such information is that there was no probable cause. Put simply: the crime for which the affiant is trying to secure a finding of probable cause to search Mr. Gosnell's residence is the crime of possession of child pornography. Regardless of its purpose, if a financial transaction was refunded, or cancelled, it would require an unreasonable leap in reasoning to conclude such a transaction resulted in the transfer of child pornography, or anything at all.

**B.     Agent Tallio intentionally and/or recklessly omitted material facts to mislead the magistrate.**

As stated above, *Franks* applies also to omissions. *U.S.* v. *Colkley*, 899 F.2d 297, 301-02. (4th Cir. 1990). With regard to omissions, in order to satisfy the *Franks* falsity requirement, the Defendant must first show that facts were omitted either intentionally, or with reckless disregard for the truth, resulting in the affidavit being misleading. *U.S. v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008). *See Miller v. Prince George's Cty.*, MD, 475 F.3d 621, 629 (4th Cir. 2007) ("selectively includ[ing] information bolstering probable cause, while

omitting information that did not . . . can mislead a magistrate by reporting less than the total story, thereby manipulating the inferences a magistrate will draw"). Then, the Defendant must also show that the inclusion of the omitted information was material to the determination of probable cause. *U.S. v. Lull*, 824 F.3d 109, 115-20. (4th Cir. 2016). To demonstrate its materiality, the Defendant must show that, had the omitted material been included, the affidavit would not give rise to a finding of probable cause. *Colkley,* 899 F.2d at 301 (4th Cir. 1990). Once the two-part preliminary showing is made, the Defendant is entitled to a Franks hearing, where he must prove his allegations by a preponderance of the evidence. *See Franks*, 438 U.S. at 156, 98 S.Ct. 2674. If the Defendant successfully meets his burden, the warrant must be voided and the evidence or testimony that came as a result must be suppressed. *Id*. Such a warrant falls outside the protections of the good-faith exception to the exclusionary rule. *U.S. v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405 (1984).

Because Courts recognize the difficulty of meeting this burden of proving that an omission was made either with intent or reckless disregard for the truth, an inference in favor of the Defendant may be drawn upon finding a material omission. See, e.g., *Tomblin*, 46 F.3d at 1376 (recklessness can be inferred directly from the omission itself); *U.S. v. Cronan*, 937 F.2d 163 (5th Cir. 1991) (intentional omissions affecting probable cause determination requires exclusion of evidence seized); *U.S. v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) ("[i]t is possible that when the facts omitted from the affidavit are clearly critical to a finding of probable cause the fact of recklessness may be inferred from the proof of the omission itself.")

Probable cause is the fair probability, supported by facts, that evidence will be found at a location, thereby justifying its being searched. It is a finding which depends on

the *totality of the circumstances*; in other words, it must be based on the persuasiveness of the officers' information *as a whole*. From the totality of the facts, the magistrate draws the aforementioned fair probability, in which is implied the belief that the person subjected to the search has engaged in some behavior warranting his residence being searched. And if the set of circumstances presented to the magistrate is less than comprehensive (not a *totality*) that means, essentially, that it is a *selection*; and anyone taking it upon himself to select for the magistrate what facts she needs, and what facts she does not, is actually undermining her power to make a fair and impartial determination as to the existence of probable cause.

The present case began with a CyberTip identifying 171 PayPal accounts as being suspect of purchasing child pornography. However, only 19 of them (or 21, depending on whether one considers the two accounts that were kept anonymous), were included and discussed in the affidavit. ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████ To be clear, the affidavit is therefore pervaded by omissions of two sorts: first, the absence of any information pertaining to the more than one hundred individuals identified by the CyberTip who were not included in the affidavit; and second, the details that were omitted in the description of

the 21 individuals who were included. As a result of these omissions, the presentation of details pertaining to those individuals who *were* included in the affidavit is framed in such a way that, first, the magistrate would be convinced that they and ██████ were involved in criminal behavior, and second, that she would mistake them as being representative of *all* the 171 suspected account members. This is unfortunate, because these 21 individuals are actually misrepresentative, and misleadingly so.

This group of 19, or 21 (for simplicity's sake, 21) presented in the affidavit comprises only 12% of the total number of individuals (171) identified by PayPal as suspected buyer accounts, which means that the remaining 88% are left out. As a result of this omission, the affiant is able to present this small minority of individuals—those "suspected buyers" with criminal histories, etc.—as comprising the totality of individuals relevant to Mr. Gosnell's case. The affiant presents them one by one, and then, in a highly suggestive manner, slips Mr. Gosnell into their number.

Out of 171 PayPal account holders, whose sole "thread" of connection to ██████ was their PayPal transactions with him, 21 had other attributes authorities could point to as corroborating that this connection to ██████ indicated involvement in some child pornography underworld. In spite of the fact that Mr. Gosnell could not be shown to possess any such attributes, the magistrate signed the affidavit, thus concluding there was a fair probability that Mr. Gosnell's residence contained evidence of crimes involving child pornography. Such a conclusion involves an improbable leap, when the only sign of his connection to, or involvement in this world is what he shares in common with those suspected buyer account holders without criminal histories, who apparently cannot be demonstrated to be any more involved than *this*: conducting financial transactions on

PayPal. The magistrate took Mr. Gosnell from the larger group, membership in which gives rise, at best, to mere suspicion, and essentially placed him among these 21 individuals, almost all of whom were proven to be not merely suspicious, but at least fairly probably involved in the distribution, viewing, etc., of child porn. What must be emphasized is that the magistrate did so when she had *nothing more to go off of than the CyberTip investigators had from the start*. She could only have made such a "conclusion" if she had been misled by the framing of the affidavit to believe that it required no leap at all, but was rather, based upon Mr. Gosnell's adjacency to these criminals inside the affidavit, fairly probable.

As stated, the magistrate must be presented with all the facts, or circumstances, in their totality. It is difficult to conceive how, in an investigation essentially involving 171 suspects, a subset of 21 of them could ever comprise the "totality" from which probable cause is drawn. Obviously, the totality is the entire 171. And it is clear that the 88% (150/171) were not left out for the sake of brevity; instead, they were left out because their inclusion would undermine the implication the affiant wanted the magistrate to draw. They were not included because they had no criminal history, or any other characteristic that would lead investigators to believe that they were buying child pornography. Had this been made evident to the magistrate—had she been presented with the totality of the circumstances regarding the individuals transacting with ███—she would have seen that transacting with ███ did not necessarily speak to an individual's criminality, or interest in child pornography or other aberrant sexual matters; indeed, the vast majority of the suspected buyer accounts could only be shown to have sent money to ███ through PayPal for reasons that are totally unknown.

If the magistrate had been presented with the totality of the circumstances relevant to this case, she could have better appreciated just how improbable the affiant's assertion regarding probable cause to search Mr. Gosnell's residence was. And the affiant was no doubt aware of, and had access to this omitted information—for what are the chances investigators only looked into the 12% of the suspected account holders who happened to have criminal histories, and therefore supported his argument? Indeed, if there had been investigations into the 88% of the individuals omitted from the affidavit, the affiant would have been aware of them; and it is obvious that, had any of these omitted individuals been found to have criminal histories, they would have been included in the affidavit. Had the magistrate been presented with information from any reports, histories (or the lack thereof), notes, or anything regarding the investigations into these other 150 individuals, she would have better been able to see that there was no information to corroborate their participating in this kind of criminality, *just as there was no such information regarding Mr. Gosnell*. For that reason, the magistrate would have properly concluded that Mr. Gosnell belonged with them—in other words, like them, by virtue of being identified in the CyberTip, he was, at worst, merely suspicious. The magistrate would have therefore determined that it was fairly improbable that evidence of crimes related to child pornography would be found at Mr. Gosnell's residence.

For the reasons set forth herein, the defendant submits that a *Frank's* hearing is warranted.

## III.     The Leon Good Faith Exception to the Exclusionary Rule Is Inapplicable

As discussed above, to the extent the government intends to rely on the good faith exception to the exclusionary rule, the Defendant would submit that it is inapplicable to this case.

"Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *U.S. v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting *U.S. v. Leon*, 468 U.S. 897, 926 (1984)) (internal quotations omitted).

The Supreme Court has identified "four situations in which an officer's reliance on a search warrant would not be reasonable," and where the "good faith exception" would not apply:

1. the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;

2. the magistrate wholly abandoned his detached and neutral judicial role;

3. the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and

4. the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. *Leon,* 468 U.S. at 923.

Based on the totality of the circumstances in this case and the arguments set forth above, the first and third "situations" arise here, and the good faith exception should not apply.

## CONCLUSION

The residential warrant that was issued on September 15, 2025, for the search of Mr. Gosnell's residence violated the Fourth Amendment because it was issued without sufficient indicia of probable cause to believe that evidence of child pornography would be found in his residence. Refunded financial transactions with someone that happens to sell child pornography without more, does not provide probable cause to search Mr. Gosnell's residence. Second, the residential search warrant was issued based on stale probable cause. Finally, the affidavit in

support of the residential search warrant contained misleading statements and material omissions, without which the warrant would not have issued.  For the reasons set forth above, the search of Mr. Gosnell's residence was conducted in violation of the Fourth Amendment and suppression is appropriate for all fruits of the search including any incriminating statements made during the search.

Moreover, the Defendant submits that a Franks hearing is warranted based on the substantial preliminary showing set forth in the arguments above.

Respectfully submitted,

LOFTON & LOFTON, P.C.


BY:     s/Lionel S. Lofton
        LIONEL S. LOFTON, #2711
        LYNN LOFTON, #8059
        CHRISTIAN C. LOFTON, #107340
        225 Seven Farms Drive, Suite 109
        Charleston, SC 29492
        (843) 722-6319 Office
        (843) 722-6372 Facsimile
        Lofton@loftonandlofton.com

        ATTORNEYS FOR DEFENDANT

Charleston, South Carolina

January 13, 2026